IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHERIN COBB, | ) | CASE NO.  1:12-CV-2219 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Cherin Cobb's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence and therefore, conclusive.

For the reasons set forth below, the undersigned AFFIRMS the decision of the Commissioner.

## I.  PROCEDURAL HISTORY

In January 2009, Plaintiff Cherin Cobb ("Plaintiff" or "Cobb") applied for Supplemental Security Income benefits.  (Tr. 9, 80).  Cobb alleged she became disabled on August 8, 2008, due to back pain. (Tr. 29, 188).  Plaintiff amended her alleged onset date to March 11, 2010, which was the day before her fiftieth birthday. (Tr. 9, 182).  The Social Security Administration denied Plaintiff's application initially and upon reconsideration. (Tr. 83-85; 96-98).  Plaintiff filed a written request for a hearing before an administrative law judge on December 22, 2009.  (Tr. 103-05).  The administration granted Plaintiff's request and scheduled a hearing.  (Tr. 109).

1

On March 4, 2011, Administrative Law Judge Neil Sullivan (the "ALJ") convened a hearing to evaluate Plaintiff's application. (Tr. 33-71).  Plaintiff, represented by counsel, testified before the ALJ during the proceeding. (*Id*.).  Thomas Nimberger, a vocational expert (the "VE"), was also present at the hearing and testified. (*Id*.).  On August 16, 2011, the ALJ issued his decision in which after applying the five-step sequential analysis,[1] he concluded that Plaintiff was not disabled. (Tr. 9-18).

Following the issuance of this ruling, Cobb sought review of the ALJ's decision from the Appeals Council. (Tr. 4).  However, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).  Plaintiff now seeks judicial review of the Commissioner's decision.  Review is proper pursuant to 42 U.S.C. § 1383(c)(3).

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability".  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

> (1) If a claimant is doing substantial gainful activity—i.e., working for profit—she is not disabled.
>
> (2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.
>
> (3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> (4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.
>
> (5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

## II. PERSONAL BACKGROUND INFORMATION
## & PERTINENT MEDICAL HISTORY

Cobb was born on March 12, 1960 and was 50 years old at the time of her hearing (Tr. 39, 104). Accordingly, Plaintiff was considered a "person closely approaching advanced age" for Social Security purposes. *See* 20 C.F.R. § 416.963. Plaintiff has completed the eleventh grade and has past work experience as a housekeeper and a dock worker. (Tr. 43-44).

Cobb began experiencing back pain after a work-related injury around 2004 while employed by Tom Paige Catering. (Tr. 44, 74). A December 2007 MRI of Cobb's lower back showed lower lumbar disc degeneration at L5-S1, no frank disc herniation, and no canal stenosis. (Tr. 298). In January 2008, Cobb sought treatment for her back pain at St. Vincent Charity Hospital ("St. Vincent"). (Tr. 251-52). Plaintiff's physician referred her to an orthopedic surgeon, while noting that Cobb's MRI results were "unremarkable" and instructing her to return in six months. (Tr. 252). Cobb was prescribed Flexeril, Naproxen, and Tramadol. (*Id.*). During a May 2009 visit to St. Vincent, the healthcare provider noted no tenderness over Cobb's spine, refilled her prescriptions, and recommended a nerve block. (Tr. 283-84). An August 2009 report from St. Vincent indicated that Plaintiff failed to attend a spinal block that the hospital had arranged for her. (Tr. 286).

In May 2009, state examining physician Dr. Wilfredo Paras performed a consultative physical examination of Plaintiff. (Tr. 268-69). Dr. Paras noted a limited range of motion in Cobb's dorsolumbar spine, right hip, and right knee, but also found Cobb had good muscle strength, normal posture, no muscle guarding or spasms, and no joint abnormalities. (Tr. 269). Though she walked slowly with partial weight bearing on the right leg, Cobb did not use an assistive device. (Tr. 268). Dr. Paras diagnosed chronic low back pain, which he opined was probably related to lumbar sprain or strain, and degenerative arthritis. (*Id.*). He concluded his

report by stating that Cobb's "ability to perform work-related physical activities is limited by her chronic low back pain." (*Id.*). However, Dr. Paras did not indicate that Plaintiff's limitations precluded her from working.

In June 2009, state agency non-examining physician Dr. Gary Hinzman reviewed Plaintiff's records to perform a Physical Residual Functional Capacity Assessment. (Tr. 275-82). Dr. Hinzman found Cobb capable of occasionally lifting up to 50 pounds, frequently lifting 25 pounds, able to sit, stand, and walk for six hours with normal breaks, and unlimited in her ability to push and pull. (Tr. 276). Dr. Hinzman adopted the residual functional capacity ("RFC") set out by ALJ Norman Buls in Cobb's previous 2005 application for disability, which found her capable of medium work with limitations. (Tr. 76). Dr. Eli Perencevich, another state agency physician, reviewed Plaintiff's medical records in December 2009 and affirmed Dr. Hinzman's RFC assessment. (Tr. 297).

Following her alleged onset set date of March 11, 2010, Plaintiff presented to St. Vincent with complaints of low back pain traveling down her left leg. (Tr. 301). Though Cobb requested a nerve block, her physician did not prescribe one, and instead refilled her prescriptions while recommending another MRI if pain persisted. In September 2010, Plaintiff returned to St. Vincent due to back pain. (Tr. 299). The healthcare provider recommended another MRI and the possibility of a neurosurgery consultation, depending on the MRI results. (Tr. 300). At the time of this visit, Plaintiff reported she had stopped using her medication. (Tr. 299). During her hearing, Cobb indicated that she struggled to afford prescription medication due to lack of health insurance. (Tr. 48-49).

On June 14, 2011, Dr. Kimberly Togliatti-Trickett performed a second consultative physical examination. (Tr. 303-15). The doctor noted Plaintiff's complaints of low back pain

4

radiating into her left lower extremity. (Tr. 313). Cobb reported that her pain was constant and at a level of "9" out of "10." (*Id.*). The physical examination revealed that Plaintiff's gait was within normal limits, good posture, no tenderness over the lumbar spine, and normal range of motion and strength in all extremities. (Tr. 314). In a narrative summary of her findings, Dr. Togliatti-Trickett stated that Cobb was able to stand and walk for four to six hours per day, would have no problems with sitting, and would be able to lift and carry 20 to 30 pounds on occasion. (Tr. 315). Dr. Togliatti-Trickett recommended light or sedentary work. (*Id.*).

### III. THE ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since March 11, 2010, the alleged onset date.

2. The claimant has the following impairment, which will be assumed to be severe for the purpose of this analysis: musculoskeletal strains and sprains with chronic low back pain.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b), except that the claimant can never climb ladders, ropes or scaffolds, and can only frequently climb ramps or stairs. In addition, the claimant can only frequently stoop, kneel, crouch, crawl or balance and only occasionally operate foot controls with her right lower extremity. Finally, the claimant should avoid concentrated exposure to the use of hazardous machinery, operational control of moving machinery, and unprotected heights.

5. The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6. The claimant has not been under a disability, as defined in the Social Security Act, since January 15, 2009, the date the application was filed or since her amended alleged onset date of March 11, 2010.

(Tr. 11-18) (internal citations omitted).

5

## IV. ANALYSIS

Plaintiff alleges that the ALJ erred by failing to appropriately evaluate and weigh the opinions of one-time examining physician Dr. Togliatti-Trickett. Plaintiff's second assignment of error is that the ALJ improperly evaluated her credibility. The Court finds neither of these claims has merit or warrants reversal.

### A. Medical Opinion Evidence

Cobb raises a number of errors regarding the ALJ's evaluation of Dr. Togliatti-Trickett's opinions. During a June 2011 physical examination of Cobb, the doctor completed a form titled "Medical Source Statement of Ability to Do Work-Related Activities" (the "Medical Source Statement"). (Tr. 307-12). On this form, Dr. Togliatti-Trickett checked boxes indicating Plaintiff could sit, stand, and walk for a total of 2 hours each during an 8 hour day. She also noted that Plaintiff could sit, stand, or walk for only 30 minutes at one time without interruption. Though the form requested that the doctor identify the particular medical or clinical findings supporting each limitation, Dr. Togliatti-Trickett did not provide support for her sitting, standing, and walking limitations. The form also contained an evaluation of Plaintiff's ability to push and pull with her hands. Dr. Togliatti-Trickett marked that Plaintiff could only occasionally push and pull with her right and left hands and indicated this was due to Plaintiff's "lower back pain." In addition to the Medical Source Statement, Dr. Togliatti-Trickett's report included a narrative summary of her evaluation and medical conclusions. (Tr. 315). Contrary to her findings in the Medical Source Statement, Dr. Togliatti-Trickett opined that Cobb "should be able to stand and walk for at least 4-6 hours throughout the day. There should be no problem with sitting." The doctor did not comment on Cobb's ability to push or pull. Concluding her report, Dr. Togliatti-Trickett recommended light or sedentary work.

In his opinion, the ALJ expressly noted the inconsistency between the Medical Source Statement's sit, stand, and walk limitations, and the narrative summarizing Dr. Togliatti-Trickett's consultative examination. The ALJ explained that he gave the little weight to the sit, stand, and walk limitations in the Medical Source Statement. The ALJ then granted great weight to the remainder of Dr. Togliatti-Trickett's assessment because it was "consistent with the record as a whole."

Cobb alleges that it was improper for the ALJ to reject the sit/stand/walk and push/pull limitations in the Medical Source Statement while giving great weight to the remainder of the report. Plaintiff provides that the ALJ erroneously chose to rely on only the parts of Dr. Togliatti-Trickett's report that supported the ultimate RFC, and the ALJ made this choice based on medical expertise that he did not possess.

To begin, Plaintiff's argument that the ALJ wrongly rejected portions of Dr. Togliatti-Trickett's report that did not support the RFC is not well-taken. Since it is undisputed that Dr. Togliatti-Trickett was merely a one-time examining physician, her opinion was not entitled to the presumptive weight assigned to a treating physician's opinion. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Furthermore, the ALJ's decision to give great weight to Dr. Togliatti-Trickett's findings did not mean that the ALJ had to adopt every restriction noted by the doctor. *See Sonnenlitter v. Comm'r of Soc. Sec.*, No. 1:12-cv-43, 2012 WL 4794639, at *15 (N.D. Ohio Oct. 9, 2012); *Smith v. Astrue*, No. 1:12-cv-831, 2012 WL 6607007, at *8 (N.D. Ohio Dec. 18, 2012). The ALJ did not state that he assigned full weight to Dr. Togliatti-Trickett's opinion. Instead, the ALJ only attributed great weight to the doctor's findings after reviewing the entire record and therefore, was not required to adopt of all her findings. Additionally, in regard to Cobb's ability to sit, stand, and walk, Dr. Togliatti-Trickett did not indicate what objective

7

medical evidence supported her findings in Medical Source Statement, which inherently weakened the import of these limitations and corroborated the ALJ's decision to give them little weight. *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010) (The ALJ "is not bound by conclusory statements of doctors, particularly when they are unsupported by . . . documentation.").

Plaintiff's argument that the ALJ improperly discount the medical findings of Dr. Togliatti-Trickett based on the ALJ's personal medical knowledge also fails. It is correct that an ALJ may not substitute his medical judgment for a physician's where the physician's opinion is supported by medical evidence. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (*quoting Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)). However, the ALJ reserves the right to decide certain pertinent issues, such as the claimant's credibility, RFC, and employability. Furthermore, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and nonmedical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (internal citations omitted).

The record contained medical opinions from other doctors who offered evidence that contradicted Dr. Togliatti-Trickett's sit/stand/walk and push/pull limitations in the Medical Source Statement. As a result, the Court cannot say that the ALJ's rejection of these limitations was based on his personal medical knowledge. This evidence included the reports of Dr. Hinzman and Dr. Perencevich. In his June 2009 RFC assessment, Dr. Hinzman found that Cobb was able to sit, stand, or walk, each for a period of six hours per day with normal breaks, in contrast to the Medical Source Statement findings. (Tr. 276). Dr. Hinzman also noted that Plaintiff was unlimited in her abilities to push and pull. (*Id.*). Concluding his review, the doctor

adopted the RFC determination set out by ALJ Norman Buls in Plaintiff's prior application for disability in 2005. (Tr. 76).  ALJ Buls's RFC limited Plaintiff to medium work with the ability to stand or walk for six hours per day (with normal breaks) and sit continuously for six hours (with breaks every two hours). (*Id.*).  The RFC contained no pushing and pulling limitations.  In December 2009, Dr. Perencevich reviewed Plaintiff's file and affirmed Dr. Hinzman's RFC. (Tr. 297).  Although Dr. Hinzman and Dr. Perencevich reviewed Cobb's records prior to Dr. Togliatti-Trickett's assessment, Cobb does not point to medical evidence or events between these examinations to substantiate any new limitations that would make these reports of less importance.  Thus, medical evidence existed in the record to support the ALJ's assessment of Dr. Togliatti-Trickett's opinion.

In addition, Cobb alleges that the ALJ erred by attributing greater weight to the opinions of Dr. Hinzman, a non-examining physician, over those of Dr. Togliatti-Trickett who examined her.  This argument also fails.  Generally, more weight is given to the opinions of examining medical sources than to non-examining medical sources.  20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).  Even so, the Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are "highly qualified" and are "experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  Thus, it was not improper for the ALJ to attribute great weight to Dr. Hinzman's opinions, even though Dr. Hinzman did not perform a physical examination.  Plaintiff adds that Dr. Hinzman's findings were undermined because they conflicted with Dr. Paras's opinion, which noted Cobb's "ability to perform work-related physical activities is limited by her chronic low back pain." (Tr. 269).  However, Dr. Paras's statement regarding Cobb's limitations is

9

ambiguous and does not indicate that Cobb was disabled. Plaintiff points to no part of Dr. Para's report that shows she could not work. Furthermore, as a one-time examiner, Dr. Para's opinion was not afforded any special deference. After taking all medical evidence into account, including Dr. Paras's exam, Dr. Hinzman found that Cobb's records demonstrated that she was able to work, and the ALJ appropriately credited his opinion.

### B. Claimant's Credibility

It is the ALJ's responsibility to make decisions regarding the credibility of witnesses. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Notwithstanding, the ALJ's credibility finding must be supported by substantial evidence, *Walters*, 127 F.3d at 531, as the ALJ is "not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

The Sixth Circuit follows a two-step process in the evaluation of a claimant's subjective complaints of disabling pain. 20 C.F.R. §§ 416.929(a), 404.1529(a); *Rogers,* 486 F.3d at 247; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853-54 (6th Cir. 1986); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994). First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms. *Rogers,* 486 F.3d at 247. Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to work. *Id.* The ALJ should consider the following

factors in evaluating the claimant's symptoms: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians. *Id.*; *see Felisky*, 35 F.3d at 1039-40; SSR 96-7p.

In the case *sub judice*, the ALJ determined that Cobb's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. The ALJ's opinion addressed the factors in SSR 96-7p by examining the evidence of record, including medical evidence and Cobb's testimony.

Plaintiff takes issue with the ALJ's credibility determination on four specific grounds. To begin, Plaintiff alleges the ALJ erred by stating that her limited daily activities were outweighed by other factors discussed in the ALJ's decision. (Tr. 13). The ALJ acknowledged that Plaintiff's description of her activities was fairly limited, but chose not to fully credit her testimony in this regard, because it was not supported by the medical evidence of record. A claimant's daily activity is one of the enumerated factors that SSR 96-7p requires the ALJ to consider in the credibility determination. SSR 96-7p. Further, the regulations provide that when evaluating credibility, the ALJ may consider "the degree to which the individual's statements are consistent with the medical signs . . . and other information provided by medical sources." *Id.* The ALJ reasonably chose to discredit Plaintiff's testimony regarding her daily activities because medical evidence did not support such limited activity. Plaintiff points to no medical provider suggesting that she limit her activities. Furthermore, any alleged error on this ground is immaterial because the ALJ noted other good reasons for not fully crediting Cobb.

Next, Plaintiff alleges that the ALJ improperly discredited her testimony based on her work history. The ALJ noted that Cobb's sporadic work history prior to the alleged disability onset date made him question whether her continued unemployment was due to medical impairments. (Tr.13). Though it is unclear what the ALJ intended by this statement, any error due to the ALJ's reliance on Plaintiff's work history is de minimis. The ALJ's opinion contains other good reasons for his decision to discredit Plaintiff's allegations of pain.

Cobb also maintains the ALJ failed to consider her ability to afford medical care when he noted her infrequent treatment history, limited use of medication, and missed doctor appointments. The Social Security regulations indicate that the adjudicator should consider the claimant's reasons, including the inability to afford medical care, for failing to pursue regular treatment. SSR 96-7p. Even so, the ability to afford treatment is not the only factor the ALJ should consider in determining a claimant's credibility. The regulations explain that credibility turns on "all of the evidence in the case record," requiring the ALJ to also consider objective medical findings and statements from physicians. *Id.* Here, the ALJ's decision contains additional reasons for discrediting Cobb's allegations of pain, despite his failure to acknowledge Cobb's financial constraints when assessing her credibility.

Finally, Plaintiff alleges that it was improper for the ALJ to base his credibility determination on her "unpersuasive appearance and demeanor" at the hearing, without explaining why he found her to be unpersuasive. The ALJ is not free to reject an individual's complaints solely on the basis of personal observations, but the ALJ may factor his observations of the claimant at the oral hearing into the overall evaluation of the claimant's credibility. *Id.* Here, the ALJ noted that his observation of Cobb at her hearing was "one among many" factors he relied on in evaluating her credibility. Thought the ALJ did not substantiate his comment

12

about Plaintiff's appearance or demeanor, because the ALJ did not rely solely on his observations of Plaintiff, any alleged error on this basis does not warrant remand.

Despite Plaintiff's allegations, the ALJ's opinion provided a number of good reasons for failing to fully credit her complaints of pain.  First, the ALJ noted that Cobb's physicians commented on her symptom magnification.  The ALJ quoted from Dr. Togliatti-Trickett's narrative findings which provided, "[t]he patient is limited by her subjective complaints of pain which outweigh her physical exam findings noted today." (Tr. 16, 315).

In addition, the ALJ reviewed Cobb's testimony regarding her pain and limitations, which not comport with findings made by examining and non-examining state agency physicians.  Cobb testified that she could lift items weighing only 5 to 10 pounds, but generally would not do so when performing activities like grocery shopping to avoid strain on her back. (Tr. 53). The ALJ noted that in contrast, Dr. Togliatti-Trickett found her able to lift and carry up to 20 pounds occasionally and up to 10 pounds continuously.  Plaintiff also testified that she could walk or stand about 15 to 30 minutes, while Dr. Togliatti-Trickett and Dr. Hinzman found her capable of doing so for up to 6 hours with normal breaks.

Finally, the ALJ referenced Plaintiff's conservative course of treatment, which did not support her disabling pain. (Tr. 14). The ALJ noted that when Plaintiff presented to St. Vincent, healthcare providers treated her allegedly severe pain chiefly by prescribing Flexeril, Naproxen, and Tramadol. (Tr. 285, 300).  Plaintiff does not point to evidence showing that physicians at St. Vincent recommended any significant treatment or limits on her physical activities.

Cobb has not presented medical evidence suggesting that her condition could reasonably be expected to produce the alleged disabling pain.  The burden of proof lies with the plaintiff to prove disability.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  Plaintiff has

13

not provided sufficient evidence to carry this burden, nor has she shown that substantial evidence does not support the ALJ's credibility determination.  Thus, the undersigned must affirm.

## VII.   DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  September 30, 2013.